**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JANE DOE, et al, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>NORTHWESTERN UNIVERSITY,<br><br>   Defendant. | Case No. 1:24-cv-04125-JRB-JC<br><br>Honorable John Robert Blakey |

**MEMORANDUM IN SUPPORT OF PLAINTIFF JOHN DOE 3'S UNOPPOSED
MOTION TO PROCEED PSEUDONYMOUSLY**

Plaintiff John Doe 3 ("Plaintiff") respectfully submits this motion to proceed pseudonymously.

## I. INTRODUCTION

Plaintiff is a Jewish student at Northwestern University ("Northwestern") who has been subjected to threats of physical violence while on campus and is the victim of retaliation and false accusations by individuals that attended pro-Hamas demonstrations at Northwestern. Other Jewish students on campus have been physically assaulted and have similarly faced severe and pervasive hostility on campus as a result of their Jewish identity. The perpetrators of these acts of intimidation and violence have acted with impunity and are waiting for Plaintiff on campus when he returns this Fall quarter. Plaintiff thus brings this motion to proceed pseudonymously in order to protect his identity and avoid further victimization.

Northwestern has adopted various policies designed to ensure the privacy of victims of discrimination and other wrongs. Not only does Northwestern claim to protect victims, but the university has also stated that it will protect the very individuals that are responsible for the harassment and threats of violence Plaintiff endured on campus. Northwestern recognizes the potential harm Plaintiff would face if his identity was exposed and does not oppose Plaintiff's request for anonymity. Nevertheless, because the Seventh Circuit disfavors the use of pseudonyms by litigants, the Court must engage in an exacting independent analysis of Plaintiff's request.

The Seventh Circuit has long rejected the use of a rigid test for determining whether the harm to the plaintiff from public identification exceeds the likely harm from concealment of their identity. Rather, the Seventh Circuit requires district courts to engage "in the careful and demanding balancing of interests required in making this determination," which includes consideration of, *inter alia*, whether a victim or wrongdoer seeks anonymity, whether disclosure risks retaliation to the victim, whether the public interest is served by anonymity, and whether a defendant will suffer any prejudice. The Seventh Circuit's recent decisions in *Doe v. Trs. of Ind. Univ.*, 101 F.4th 485 (7th Cir. Apr. 26, 2024) ("*Indiana University*") (plaintiff John Doe sued

Indiana University after he was expelled for physically abusing female student), and *Doe v. Loyola Univ. Chi.*, 100 F.4th 910, 914 (7th Cir. May 3, 2024) ("*Loyola*") (plaintiff John Doe sued Loyola after he was expelled for nonconsensual sexual activity with female student), do not change this analysis, because (as discussed below) neither sets forth a rigid test to be applied to *victims* of discrimination who are at risk of further violence and retaliation for their religious identity.

As a victim of severe hostility and discrimination based on his Jewish identity, Plaintiff reasonably fears further harm and retaliation from disclosure of his identity. As explained below, this harm is not speculative but grounded in the calls for violence against Jews on campus, and indeed, actual acts of violence. Moreover, Plaintiff reasonably fears retaliation because his perpetrators remain on campus and, over the course of the summer, have continued their efforts to harass and threaten Jews out of hatred.

Moreover, the public interest in open proceedings is outweighed by the public interest in allowing victims of discrimination to proceed anonymously so as not to chill access to the justice system for victims. Also, Northwestern will not be hindered in its defense of the litigation as Plaintiff has disclosed his identity to it and only seeks to protect his identity from the public.

Accordingly, Plaintiff respectfully requests that his motion to proceed pseudonymously be granted.

## II.     FACTUAL BACKGROUND

Since the terrorist attacks perpetrated by Hamas on October 7, 2023, the ever-present antisemitism that Jewish students face on college campuses, including Northwestern, has exploded. According to a recent survey of 1,171 college students and recent graduates, 44% said they "rarely" or "never" feel safe identifying as Jewish on campus, an increase from 20% in 2021. Ex. A,[1] Alums for Campus Fairness, "Tracking the Surge: The Alarming Rise of Antisemitism on American College Campuses (Aug. 26, 2024), at 19.  Over half of survey participants stated that they were physically threatened because they are Jewish or knew someone who was threatened

---

[1] "Ex. 1" refers to exhibits to the Declaration of Elizabeth A. Fegan ("Fegan Decl.").

and nearly eight in ten respondents stated they have avoided places at school out of concern for their safety as a Jew. *Id*. at 6, 21. These findings reveal the chilling reality Jewish students like Plaintiff face at Northwestern.

Plaintiff is a graduate student at Northwestern's Weinberg College of Arts & Science. Declaration of Plaintiff John Doe 3 ("Plaintiff Decl."). ¶ 3. He lives in Chicago, Illinois near Northwestern's Evanston campus. *Id*. ¶ 4. Since October 7th, Plaintiff has had violent antisemitic rhetoric shouted at him on multiple occasions. *Id*. ¶ 5. On one occasion, Plaintiff was walking near an unauthorized demonstration on campus called "Strike for Gaza" where a woman was giving a lecture to a group of students. *Id*. ¶ 6. Plaintiff saw posters at the demonstration that stated "resistance is justified when people are occupied. #AlAqsaFlood." *Id*. A woman at the demonstration repeated the phrase "resistance is justified when people are occupied" at Plaintiff, which he understands is an acceptance of Hamas' barbarism and a call for further acts of violence against Jews. *Id*.

During another incident on campus, a masked "protester" threatened Plaintiff with physical violence by making an inverted triangle symbol with his hands at Plaintiff, which is a symbol Hamas uses to identify targets in its propaganda videos and is widely recognized as a call for violence specifically against Israelis and Jews. *Id*. ¶ 7.[2] Next to this "protester" was another masked individual who took a photo of Plaintiff who was not concealing his identity, which may be used to "doxx" Plaintiff. *Id*. Plaintiff has also been the subject of false accusations that were vexatiously reported to the university as a form of retaliation, solely due to his Jewish identity. *Id*. ¶ 8.

In addition to the anti-Jewish incidents Plaintiff experienced firsthand, he was aware of many other incidents on campus which contributed to the overwhelming hostility he endured on campus. *Id*. ¶ 9. Plaintiff is aware that Jewish students have been physically assaulted and that

---

[2] *See* Consolidated Class Action Complaint ("Compl."), Dkt. 24, ¶ 54, 95.

Hamas' barbaric terrorist acts intended to kill Jews are commonly glorified on Northwestern's campus. *Id*.

As a result of the antisemitic incidents on campus, Plaintiff has begun to suffer from a heightened state of anxiety and agitation on and off campus. *Id*. ¶ 10. Such mental health issues have affected his ability to sleep, concentrate on work, and cause him to avoid being on campus whenever possible and only go on campus when necessary. *Id*. Plaintiff is anxious that a physical or verbal antisemitic incident can occur at any moment on campus and is afraid that other students and faculty members might identify him as Jewish and, as a result, target him because of his Jewish identity. *Id*. ¶ 11. Plaintiff fears that members of Northwestern's campus as well as individuals in the general public will seek to intimidate him, as they have done to others, which may include acts of physical violence. *Id*.

Plaintiff is not a public figure or generally known to the public. He is a private individual who wishes to keep his religious beliefs and Jewish identity confidential for fear of further victimization from radicals amongst society and on campus. *Id*. ¶ 13. If Plaintiff is forced to reveal his identity to the public, he would consider withdrawing as a plaintiff due to his reasonable fear of physical violence and intimidation. *Id*. ¶ 15.

### III. PROCEDURAL HISTORY

Plaintiff filed his initial complaint in this action on May 20, 2024. Dkt. 1. On June 14, 2024, Northwestern moved to consolidate Plaintiff's action with a related case that was filed in the Circuit Court of Cook County, Illinois and removed to this Court (the "State Court Action"). Dkt. 17.

Prior to consolidation, the court in the State Court Action granted the State Court Plaintiffs' Petition to Appear and Proceed Under Fictitious Names Pursuant to 735 ILCS 5/2-401(E). *See* Fegan Decl. ¶ 6. Accordingly, the identities of Jane Doe, John Doe 1, and John Doe 2 are currently under seal. *Id*.

4

On July 9, 2024, the Court consolidated this action with the State Court Action. Dkt. 23. On August 6, 2024, Plaintiff and Jane Doe, John Doe 1, and John Doe 2 filed their Consolidated Class Action Complaint. Dkt. 24.[3] John Doe 3 thus brings this motion to proceed pseudonymously.

## IV. ARGUMENT

**A. The Seventh Circuit's balancing test requires the Court to consider whether the harm to the plaintiff from disclosure of his identity exceeds the likely harm from concealment.**

While "[t]he use of fictitious names is disfavored… exceptional circumstances [may] justify such a departure from the normal method of proceeding in federal courts." *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997). The decision whether to allow a party to proceed pseudonymously "when the balance of harms justifies it" is within the discretion of the Court. *Doe v. Trs. of Ind. Univ.*, 101 F.4th 485, 492 (7th Cir. 2024). In *Doe v. City of Chicago*, the Seventh Circuit articulated a balancing test for proceeding pseudonymously, stating:

> The presumption that parties' identities are public information, and the possible prejudice to the opposing party from concealment, can be rebutted by showing that the harm to the plaintiff … exceeds the likely harm from concealment.

360 F.3d 667, 669 (7th Cir. 2004) (citations omitted). The Seventh Circuit has explained that pseudonyms "are allowed when necessary to protect the privacy of… particularly vulnerable parties"[4] or where there is the potential for "either physical harm or retaliation by third parties, beyond the reaction legitimately attached to the truth of events as determined in court…."[5]

"Courts dealing with requests to proceed under fictitious names have avoided trying to articulate any mechanical legal test." *Doe v. Univ. of Notre Dame*, No. 3:17CV298-PPS/MGG, 2017 U.S. Dist. LEXIS 223299, at *3 (N.D. Ind. May 8, 2017) (citation omitted). Non-dispositive

---

[3] The plaintiffs from the State Court Action are identified as Jane Doe, John Doe 1, and John Doe 2 in the Consolidated Class Action Complaint.

[4] *Blue Cross & Blue Shield United*, 112 F.3d at 872.

[5] *Indiana University*, 101 F.4th at 491; *see also City of Chicago*, 360 F.3d at 669-70 "[t]he danger of retaliation is often a compelling ground for allowing a party to litigate anonymously….").

5

factors courts may consider include: (i) "Whether the case involves a highly sensitive and personal matter or requires the disclosure of information of the utmost intimacy;" (ii) "Whether denying the motion would increase the likelihood that similarly situated plaintiffs would be chilled from bringing similar claims;" (iii) "Whether there is a risk of prejudice to the opposing party;" and (iv) "Whether the movant's identity has been disclosed to the public or kept confidential." *Doe v. Bd. of Educ. of DeKalb Cmty. Unit Sch. Dist. 428*, No. 23 C 50292, 2023 U.S. Dist. LEXIS 223601, at *3-4 (N.D. Ill. Dec. 15, 2023) (identifying 13 non-dispositive factors) (citation omitted).[6] As explained below, the balancing of interests weighs in favor of allowing Plaintiff, a victim of harassment due to his Jewish identity, to proceed with a pseudonym.

The Seventh Circuit's recent decisions in *Indiana University* and *Loyola* on the use of pseudonyms by *wrongdoers* did not change the balancing test for whether a victim of discrimination and harassment is entitled to anonymity.[7]

In *Indiana University*, the Seventh Circuit looked harshly on the *perpetrator* plaintiff Doe's use of a pseudonym where "his asserted interest lies in protecting his reputation—even though the University found that Doe committed physical violence against Roe." 101 F.4th at 491. The Seventh Circuit also criticized the district court's categorization of the perpetrator's abuse as "information of the utmost intimacy." *Id.* at 492. (stating "[t]he magistrate judge also wrote that disclosure would reveal 'information of the utmost intimacy,' which is an odd way to describe the University's finding that Doe engaged in assault and battery."). The court held that the stigmatization *to the perpetrator* of disclosure of his crimes is "embarrassment [which] does not justify anonymity." *Id.* The Seventh Circuit did *not* hold that harm *to a plaintiff victim* who sought

---

[6] *See also Univ. of Notre Dame*, 2017 U.S. Dist. LEXIS 223299, at *4 (identifying six non-exclusive factors).

[7] The Seventh Circuit has a history of criticizing a plaintiff's use of a pseudonym where he is the alleged wrongdoer. *See, e.g., Coe v. Cook County,* 162 F.3d 491, 498 (7th Cir. 1998) ("Mr. 'Coe' may well feel embarrassed about having impregnated a woman to whom he was not married. But the embarrassment felt by a person who engages in immoral or irresponsible conduct is not a compelling basis for a waiver of the general rule that parties to federal litigation must litigate under their real names."). The Seventh Circuit has not lodged that same criticism against victims who seek to proceed pseudonymously.

6

to proceed anonymously was irrelevant. *See Morgan v. Ind. Dep't of Corr.*, No. 2:24-cv-00336-JPH-MKK, 2024 U.S. Dist. LEXIS 142683, at *4 (S.D. Ind. Aug. 12, 2024) ("'Courts often extend the protection of anonymity to the *victims* of sex crimes,' not their perpetrators." (quoting *Loyola Univ. Chi.*, 100 F.4th at 914) (emphasis added in *Morgan*).

Subsequent to *Indiana University*, the Seventh Circuit again considered *an alleged perpetrator Doe's* use of a pseudonym. *Loyola*, 100 F.4th 910. As part of its analysis, the court inquired whether the victim (referred to as "Roe") had a right to proceed under a pseudonym. Id. at 914. The Seventh Circuit explained that the decision whether a victim of abuse was entitled to anonymity (and whether the Federal Educational Rights Protection Act entitled university students to anonymity) "was flagged but not resolved in *Indiana University*, slip op. 10." *Id.* The Seventh Circuit noted that it lacked "the benefit of an adversarial exchange" on the question of the victim's use of a pseudonym. *Id.* The court noted that "[c]ourts often extend the protection of anonymity to victims of sex crimes…," and nowhere disavowed that victim status is a relevant consideration. *Id.* (citing *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869 (7th Cir. 1997)).

The common thread throughout the Seventh Circuit's opinions on whether a litigant may proceed pseudonymously is criticism of district courts' lack of analysis – and not the district courts' failure to apply a rigid test.[8] The same critique resulted in the recent *Indiana University* decision. 101 F.4th at 492 ("For his part, the district judge said only what we have already quoted: that pseudonyms enable anonymity. That will not do. 'It is important that a reviewing court be confident that the [district] court actually engaged in the careful and demanding balancing of

---

[8] *See, e.g., Elmbrook Sch. Dist.*, 658 F.3d at 722 ("We previously have expressed concern when district courts have granted a motion to proceed anonymously without explaining their grounds for doing so. *See Smith*, 429 F.3d at 710 (remanding to the district court to explore propriety of litigating anonymously where district court 'granted [the plaintiff's] application to do so without discussing this circuit's decisions'); *Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d at 872 (stating that although a district court's granting of an unopposed motion to litigate anonymously without an accompanying explanation 'was entirely understandable given the absence of objection and the sensitivity of psychiatric records, . . . the privilege of suing or defending under a fictitious name should not be granted automatically even if the opposing party does not object').")

7

interests required in making this determination.' *Doe 3*, 658 F.3d at 722. That cannot be said of the events in this case.") (brackets in original).

Importantly however, the Seventh Circuit did not outline a new and rigid test which students facing severe discrimination on university campuses must meet to justify the use of pseudonyms; rather, the law in the Seventh Circuit continues to require that district courts "engage[] in the careful and demanding balancing of interests required," 101 F.4th at 492 (quotations omitted), to determine whether "the harm to the plaintiff … exceeds the likely harm from concealment," *City of Chicago*, 360 F.3d at 669. As demonstrated herein and consistent with the State Court Action's decision allowing Plaintiffs Jane Doe, John Doe 1 and John Doe 2 to proceed under fictitious names, the harm to Plaintiff of disclosure of his identity exceeds the harm of concealment. Thus, this motion should be granted.

### B. The harm to Plaintiff from disclosing his identity exceeds the likely harm from concealment.

#### 1. Public identification would increase Plaintiff's risk of suffering further injury and retaliation.

This action concerns information of the most private and personal nature for Plaintiff, the disclosure of which would put him at risk of suffering further injury, including physical assault. "Lawsuits involving religion can implicate deeply held beliefs and provoke intense emotional responses[,]" which may raise the "'danger of retaliation'" and provide "compelling ground for allowing a party to litigate anonymously.'" *Doe 3 v. Elmbrook Sch. Dist.*, 658 F.3d 710, 723 (7th Cir. 2011) (quoting *City of Chicago*, 360 F.3d at 669); *Doe v. Trs. of Ind. Univ.*, 577 F. Supp. 3d 896, 904 (S.D. Ind. 2022) ("[T]he types of personal intimate information justifying anonymity for litigating parties have typically involved such intimate personal matters as… religious beliefs[.]") (citing *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)).[9] The Seventh Circuit reiterated this point in *Loyola*, stating that retaliation based on an "animus toward people with unpopular religious

---

[9] *See also Engel v. Vitale*, 370 U.S. 421, 431-32 (1962) ("religion is too personal, too sacred, too holy, to permit its 'unhallowed perversion' by a civil magistrate.")

8

...

belief" may warrant a plaintiff proceeding anonymously. *Loyola Univ. Chi.*, 100 F.4th at 913 (citing *Elmbrook School Dist.*, 658 F.3d at 721-24, adopted on this issue by *Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 842-43 (7th Cir. 2012) (en banc)).[10]

Here, Jewish students like Plaintiff have become *persona non grata* on Northwestern's Evanston campus. *E.g.*, Compl. ¶ 89 (sign with black Star of David with a red slash through it); ¶ 100 ("we don't want no Zionists here"). Among other allegations, Plaintiff alleges that Northwestern permitted an openly hostile, discriminatory, and at times violent group of demonstrators to squat for days on the main campus lawn of Deering Meadow in an encampment called the "Liberated Zone." *Id*. ¶¶ 85-105. The encampment contained individuals who are openly pro-Hamas, a designated terrorist organization that calls for, *inter alia*, "attack[ing] every Jew on planet earth" and to "fight Jews and kill them." *Id*. ¶¶ 28-29, 87-88, 97. These calls for violence have been heeded by individuals on Northwestern's campus. For example, Jewish students on Northwestern's campus were physically assaulted, spat on, called "dirty Jews," and told to "burn in hell." *Id*. ¶¶ 90-96, 99. During one particular incident on campus, Plaintiff encountered protesters promoting the slogan: "resistance is justified when people are occupied. #AlAqsaFlood," which *only* refers to Hamas' October 7th murder, raping, and torture of Jews. Compl. ¶ 178; Plaintiff Decl. ¶ 6.[11] Plaintiff is also concerned that individuals that have threatened

---

[10] *See also Doe v. NorthShore Univ. Healthsystem*, No. 21-cv-05683, 2021 U.S. Dist. LEXIS 228371, at *26-27 (N.D. Ill. Nov. 30, 2021) (allowing plaintiffs who challenged Covid-19 vaccine mandates on religious grounds to proceed anonymously based in part on the "the private nature of religious beliefs"); *Doe v. Dordoni*, 806 F. App'x 417, 418 (6th Cir. 2020) (noting "[t]he district court allowed Doe to proceed pseudonymously due to his fear of religious persecution"); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (affirming district court decision allowing pseudonymous plaintiffs where the suit "forces Plaintiffs to reveal their beliefs about a particularly sensitive topic that could subject them to considerable harassment"); *Doe v. Blinken*, No. 2:22-cv-01841, 2022 U.S. Dist. LEXIS 209918, at *3 (E.D. Cal. Nov. 17, 2022) (allowing plaintiffs to proceed pseudonymously because "Plaintiffs' fear of persecution is reasonable based on their membership in a vulnerable religious minority and the severity of the potential harm, which includes possible harassment and physical violence"); *Doe v. Barrow Cnty.*, 219 F.R.D. 189, 193 (N.D. Ga. 2003) (same; noting that religious beliefs are sufficiently private to warrant a plaintiff's proceeding anonymously).

[11] On April 26, 2024, Northwestern SJP issued a statement explaining that the "Northwestern Liberated Zone" is "inspired by actions at Columbia [University]." Columbia's encampment was organized by an individual who stated: "Be grateful that I'm not just going out and murdering Zionists"; "There should not

9

him with physical violence may attempt to "doxx" him and otherwise continue to assert harmful false accusations against him as a form of retaliation. Compl. ¶ 177; Plaintiff Decl. ¶¶ 6-8, 11.

As a result, Plaintiff reasonably fears that he will face similar physical and verbal antisemitic incidents on Northwestern's campus when Northwestern's Fall Quarter begins in September 2024, and beyond. Plaintiff Decl. ¶ 11. Plaintiff understands that Northwestern has not removed the individuals and organizations responsible for his harassment from campus and such individuals and organizations will remain on campus when he returns for the Fall. Plaintiff Decl. ¶ 12; Fegan Decl. ¶ 5; Ex. B, D'Onofrio, "Northwestern president testifies at Congressional hearing on alleged antisemitism at colleges," ABC (May 23, 2024). Critically, Plaintiff's fears that the antisemitic incidents he experienced will continue are not pure speculation without support. Following Northwestern's agreement with organizers of the Liberated Zone encampment, including the student organization Students for Justice in Palestine ("SJP"),[12] these students made clear that "th[e] agreement does not mark the cessation of our resistance." Compl. ¶ 117 n.65. Throughout the summer break, Northwestern SJP has continued to engage in activities that harass individuals that oppose its ideology—many of which happen to be Jews. Northwestern SJP and affiliated groups organized a protest of approximately 40 individuals to "punish" Jewish Congressman Rob Schneider by showing up at his Highland Park home at 2:30 a.m. on June 29, 2024, with banners, loudspeakers, and drums to voice pro-Hamas slogans and spilled animal blood on his sidewalk. Ex. C, Israel, "Noisy Pro-Hamas Mob Ruins Shabbat for Jewish Dem's Family and his Chicago Neighbors," The Jewish Press (June 30, 2024). The following day, the same protesters showed up at the home of Governor Jay Robert Pritzker, who is also Jewish, in the middle of the night. Ex. D, Pierre, "Pro-Hamas Protesters Show Up at Jewish Illinois Officials' Homes, Declare 'No Sleep for War Criminals,'" the algemeiner (July 1, 2024). According to reports, some of these protestors approached residents asking if they are a "Jew." *Id*. Plaintiff fears

---

be Zionists anywhere. Zionists are Nazis"; "Zionists, along with all white supremacists, need to not exist"; and "Zionists, they don't deserve to live comfortably, let alone, Zionists don't deserve to live." Unsurprisingly, Columbia's encampment was filled with similar antisemitic rhetoric leading to violence.

[12] *See* Compl. ¶ 86, n.50 (detailing SJP's connections to Hamas).

that the same harassment and threat of violence would show up at his doorstep if his identity is revealed.

Finally, Plaintiff also fears threats from the public given the general rise of antisemitic incidents in the United States and, more specifically, the public attention the issue of antisemitism on college campuses has received.[13] *See Doe v. NorthShore Univ. Healthsystem*, No. 21-cv-05683, 2021 U.S. Dist. LEXIS 228371, at *27-28 (N.D. Ill. Nov. 30, 2021) (noting that the Supreme Court recently addressed pseudonymous litigation by plaintiffs challenging a vaccine mandate and allowing plaintiffs to proceed anonymously "[g]iven the charged atmosphere concerning vaccinations and vaccine mandates").

At this stage, Plaintiff is not required to submit "evidence of actual violence arising out of this particular suit." *Elmbrook Sch. Dist.*, 658 F.3d at 723-24. Rather, Plaintiff's uncontradicted account of past retaliation suffices and the Court should not give "an innocent construction [to Plaintiff's experiences] in order to reject [his] motion." *Id*.

*Elmbrook Sch. Dist.* is instructive. In that case, plaintiffs testified that "they and their children had suffered reprisals in the past—including from teachers, school officials and workplace supervisors—for airing their views on religion and that they feared future reprisals should their involvement in the litigation become public knowledge" and submitted comments from an online forum supporting their concern for future harm. *Id.* at 723. Despite the Seventh Circuit finding that "[m]ost of the comments [concerning plaintiffs] merely reflect[ed] the overheated rhetoric common to passionate debate about significant social issues," the court affirmed the district court's

---

[13] *See* Ex. E, Press Release, ADL Reports Unprecedented Rise in Antisemitic Incidents Post-Oct. 7 (Dec. 11, 2023) (the Anti-Defamation League reported that between October 7, 2023 and December 7, 2023, the organization recorded a total of 2,031 antisemitic incidents, up from 465 incidents during the same period in 2022, representing a 337% increase year-over-year); Ex. F, Blog, "Chicago Sees Rise in Antisemitic Incidents and Activism Amid Action by Anti-Israel Groups" (March 2024) (reporting that on March 13, 2024, a Jewish man was assaulted by anti-Israel demonstrators as he arrived at the screening of a documentary about the October 7th attacks); Ex. G, Chicago Commission on Human Relations 2024 Hate Crimes and Hate Incidents Report (June 27, 2024), at 19 (as of June 13, 2024, there were 50 anti-Jewish hate crimes and hate incidents reported, 40% of all reported hate crimes and more than twice the number of anti-Black and anti-Gay incidents, despite Jews being a fraction of the population).

finding that pseudonyms were warranted. *Id.* With respect to the online comments, the Seventh Circuit found that comments such as " Does' views '[s]ound[] like the Muslim attitude of hating all Christians and wanting to do away with them,' that the appropriate response is to 'do them in before they do you in' and suggesting that the conflict between supporters and detractors of the District's use of the Church is 'a war of survival'" raised "legitimate concerns" for retaliation. *Id*. Similar comments against Jews—if not more violent—were routinely shouted at Plaintiff and found on campus. *See, e.g.*, ¶¶ 92, 94, 96, 98, 100.

Accordingly, revealing Plaintiff's identity and subjecting him to unwanted attention could place him in the crosshairs of violent individuals that have targeted Jews in the Chicagoland, and therefore, this factor weighs in favor of Plaintiff proceeding anonymously.

### 2. Plaintiff's use of a pseudonym will not prejudice Northwestern because the university already knows his identity.

Northwestern's ability to defend the case is unaffected by Plaintiff's use of a pseudonym. "Under this factor, courts look at the damage to a defendant's reputation caused by the anonymous proceeding, the difficulties in discovery, as well as the fundamental fairness of proceeding in this manner." *Trustees of Indiana Univ.*, 577 F. Supp. 3d at 907. On August 27, 2024, Plaintiff disclosed his identity to Northwestern on an Attorney's Eye's Only basis. Fegan Decl. ¶ 3. Accordingly, Plaintiff seeks only to shield his identity from the public. Courts have found that where defendants have access to plaintiffs' true identities, there is no prejudice. *Doe v. Bd. of Trs. of Ind. Univ.*, No. 1:22-cv-00524-RLY-MG, 2022 U.S. Dist. LEXIS 77220, at *8 (S.D. Ind. Apr. 28, 2022); *Univ. of Notre Dame*, 2017 U.S. Dist. LEXIS 223299, at *8-9 (finding "there is no risk of prejudice to the University" where "[t]he University knows the actual identities of Plaintiff and Jane Roe, all of Plaintiff's filings in the case will be publicly available, and the University will be entitled to the same full discovery just as if Plaintiff were litigating under this own name"); *Doe v. NorthShore Univ. Healthsystem*, No. 21-cv-05683, 2021 U.S. Dist. LEXIS 228371, at *27 (N.D. Ill. Nov. 30, 2021) ("But as [Defendant] knows the Plaintiffs' identities, it is not prejudiced by allowing this litigation to proceed in its current manner with

12

Plaintiffs' names remaining undisclosed to the public.").

Moreover, reflecting this lack of prejudice, Northwestern does not oppose Plaintiff's proceeding anonymously in this litigation. Any other position by Northwestern would be highly hypocritical given the university has various policies which are designed to allow victims of harassment and discrimination to maintain confidentiality and preserve their privacy. Ex. H, Northwestern's Policy on Discrimination, Harassment, and Sexual Misconduct (eff. Aug. 12, 2024), at 16 ("NU-OCR will maintain the confidentiality of Supportive Measures provided to either a Complainant or Respondent…"), 24 ("the University will protect the identity of persons involved in reports of alleged violations of this Policy to the best of its ability… All participants in an investigation will be informed that privacy enhances the integrity of the investigation, protects the privacy interests of the parties, and protects the participants from statements that might be interpreted to be retaliatory."). Indeed, Northwestern has gone as far as to state that it intends to "publicly condemn the doxing of any community member and will advise employers not to rescind job offers for students" who participated in the Deering Medow encampment that contributed to the hostility and threats of physical violence Plaintiff encountered on campus. Compl. ¶ 116; *see Univ. of Notre Dame*, 2017 U.S. Dist. LEXIS 223299, at *8 (finding a university's own policies to handle related disciplinary proceedings with "the utmost confidentiality" supported proceeding pseudonymously). Thus, Plaintiff's need for anonymity does not present any prejudice to Northwestern which itself has adopted various measures to protect students' privacy interests, and this factor weighs in favor of Plaintiff's proceeding under a pseudonym.

### 3. Anonymity is in the public interest in guaranteeing open access to proceedings without denying litigants access to the justice system.

Plaintiff's request for anonymity is not only justified, but also supported by the public interest in ensuring the enforcement of Title VI. As an initial matter, Plaintiff's actual identity has minimal value to the public in cases such as this, where the legal and procedural rulings will remain a matter of public record. *See, e.g., A. B. v. Brownsburg Cmty. Sch. Corp.*, No. 1:20-cv-02487,

13

2021 U.S. Dist. LEXIS 196504, at *4 (S.D. Ind. Feb. 16, 2021) ("Plaintiff's anonymity will not harm the public interest in guaranteeing open access to proceedings, since the record will not be sealed.") (citation omitted); *R.N. by & through R.T. v. Franklin Cmty. Sch. Corp.*, No. 1:19-cv-01922, 2019 U.S. Dist. LEXIS 154538, at *9 (S.D. Ind. Sept. 11, 2019) ("The actual identities of Plaintiffs are of minimal value to the public. . . . Allowing Plaintiff R.N. to remain anonymous will not interfere with the ability of the public to ascertain the status of this case."); *Univ. of Notre Dame*, 2017 U.S. Dist. LEXIS 223299, at *9 (same). Thus, allowing Plaintiffs to proceed anonymously will not harm the public interest in guaranteeing open access to these proceedings.

Furthermore, the public's general interest in open proceedings is outweighed by its interest in enforcing Title VI and protecting the identities of victims "'so that other victims will not be deterred from reporting such crimes.'" *Doe v. Reg'l Sch. Unit No. 21*, No. 2:19-00341-NT, 2020 U.S. Dist. LEXIS 94293, at *9 (D. Me. May 29, 2020) (quoting *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014); *Doe v. E. N.M. Univ. Bd. of Regents*, No. 23-cv-0362-GBW-JHR, 2024 U.S. Dist. LEXIS 1366, at *16 (D.N.M. Jan. 3, 2024) (finding "encouraging young student-athletes to report sexual abuse is also in the public's interest" and weighs in favor of anonymity).

Here, Plaintiff was subjected to a hostile and discriminatory environment, including threats of physical violence, by untold numbers of Northwestern students, faculty, and employees, as well as unaffiliated third parties Northwestern allowed on its campus. *See* Plaintiff Decl. ¶¶ 5-8. Such conduct is part of a much larger history of Northwestern tolerating antisemitism on campus. *See* Compl. ¶¶ 137-145. What's more, while the public interest in ensuring a non-hostile educational environment for Jewish students at Northwestern alone is enough, the public has a strong interest in sending a message to all universities that antisemitism on campus cannot be institutionally acceptable. Breaking the systemic acceptance of antisemitism on college campuses will only be dismantled through Plaintiff's and others' courage in seeking justice and reform. Allowing Plaintiff to proceed anonymously will encourage other victims of discrimination to come forward without the risk of harassment, retaliation, and unwanted public attention. A contrary determination may result in deterring other victims of discrimination from coming forward to vindicate their rights,

and in allowing bigot perpetrators to continue to harm others without fear of prosecution. Therefore, it is in the public interest to allow Plaintiff to proceed anonymously, ensuring open access to proceedings without denying him access to the justice system. Thus, this factor also favors anonymity.

### 4. The confidentiality of Plaintiff's identity has been maintained thus far.

Plaintiff is not a public figure or generally known to the public. Plaintiff Decl. ¶ 13. Instead, Plaintiff is a private individual who wishes to keep his religious beliefs and Jewish identity confidential for fear of further victimization from radicals amongst society and on campus. *Id*. ¶¶ 13-15. Plaintiff has not discussed or otherwise revealed his participation as a party to this Action with any third party. *Id.* Because "Plaintiff's identity has been kept confidential thus far, [this] factor weighs in favor of a grant of pseudonymity." *Bd. of Trs. of Indiana Univ.*, 2022 U.S. Dist. LEXIS 77220, at *9.

Finally, confidentiality in the State Court Action supports Plaintiff proceeding anonymously here as well. A ruling here inconsistent with that of the order in the State Court Action protecting Plaintiff's co-plaintiffs would also be contrary to the interests of justice and substantially prejudice Plaintiff. *See, e.g.*, *Sta-Rite Indus. v. Allstate Ins. Co.*, 96 F.3d 281, 286 (7th Cir. 1996) (recognizing that "inconsistent rulings between federal . . . courts, and the potential of an inequitable result . . . would create substantial prejudice . . .").

## V. CONCLUSION

WHEREFORE, Plaintiff John Doe 3 respectfully requests this Court grant his motion to proceed pseudonymously, and such other and further relief as this Court deems appropriate.

Dated: August 30, 2024

Respectfully submitted,

By: __/s/ Elizabeth A. Fegan__

Elizabeth A. Fegan
FEGAN SCOTT LLC

15

150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Jonathan D. Lindenfeld (*Pro Hac Vice*)
FEGAN SCOTT LLC
305 Broadway, 7th Floor
New York, NY  10007
Ph: 332.216.2101
Fax: 312.264.0100
jonathan@feganscott.com

David Freydin
LAW OFFICES OF DAVID FREYDIN
8707 Skokie Blvd # 312
Skokie, IL 60077
Ph: 312.544.0365
Fax: 866.575.3765

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on August 30, 2024, she caused the foregoing motion to be filed electronically with the Clerk of the U.S. District Court, using the Court's CM/ECF system, which sent electronic notification to all parties who have appeared and are registered as CM/ECF participants in this matter.

                                                            */s/ Elizabeth A. Fegan*
                                                            Elizabeth A. Fegan