**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE; JOHN DOE 1; JOHN DOE 2; and JOHN DOE 3, individually and on behalf of all other students similarly situated, | ) ) ) | |
| | ) | No. 24-cv-04125 |
| Plaintiffs, | ) ) | |
| | ) | Judge John Robert Blakey |
| *v.* | ) ) | |
| NORTHWESTERN UNIVERSITY, | ) ) | |
| Defendant. | ) ) | |

**NORTHWESTERN UNIVERSITY'S MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

James A. Morsch (james.morsch@saul.com)
Casey Grabenstein (casey.grabenstein@saul.com)
Elizabeth A. Thompson (elizabeth.thompson@saul.com)
Megan Warshawsky (megan.warshawsky@saul.com)
Saul Ewing LLP
161 North Clark Street, Suite 4200
Chicago, Illinois 60601
(312) 876-7100

Joshua W.B. Richards (joshua.richards@saul.com) – *pro hac vice*
Saul Ewing LLP
1735 Market Street, Suite 3400
Philadelphia, Pennsylvania 19103
(215) 972-7777

**TABLE OF CONTENTS**

Page

INTRODUCTION.................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

ARGUMENT.......................................................................................................................... 5

I.     The FAC Should Be Dismissed Pursuant To Rule 12(b)(1) Because Plaintiffs Do Not Have Article III Standing And Their Claims Are Moot. ................................................................... 5

    A.   Plaintiffs Do Not Have Article III Standing to Bring Claims for Others' Injuries.............. 5

    B.   Plaintiffs Jane Doe, John Doe 1, and John Doe 2's Claims for Injunctive and Declaratory Relief are Moot Because They are No Longer Students. ....................................................... 7

II.    The FAC Does Not Adequately Allege A Claim For Violation Of Title VI.......................... 7

    A.   Plaintiffs Fail to Allege a Hostile Environment Claim Under Title VI. .............................. 8

        1.   Plaintiffs Fail to Allege Severe, Pervasive, and Objectively Offensive Harassment that Denied Them an Educational Benefit. .................................................................. 8

            a.   The First Amendment Protects the Speech at Issue....................................................... 9

            b.   Much of the Alleged Conduct Has Nothing to Do With Plaintiffs........................... 11

            c.   Plaintiffs Were Not Denied an Educational Opportunity ......................................... 13

        2.   Nothing in the FAC Demonstrates that Northwestern Had Actual Knowledge of the Alleged Harms Plaintiffs Suffered.................................................................... 16

        3.   Plaintiffs' Allegations Establish Northwestern was Not Deliberately Indifferent.......... 18

    B.   Plaintiffs Do Not Allege Intentional Discrimination......................................................... 20

III.   The FAC Does Not State A Claim For Breach Of Contract. ................................................ 21

    A.   Northwestern Has Disclaimed Any Contractual Relationship in its Student Handbook. .. 21

    B.   Plaintiffs Have Not Identified a Specific and Enforceable Promise. ................................ 22

    C.   Plaintiffs Cannot Assert a Breach of Contract Claim Relating to Northwestern's Title IX Policy. .......................................................................................................................... 24

IV.    Any Requests For Mandatory Injunctive Relief Should Be Stricken................................... 24

V.     The Court Should Strike Plaintiffs' Request For Punitive Damages. .................................. 25

CONCLUSION ...................................................................................................................... 25

i

## TABLE OF AUTHORITIES

*Ahmed v. Univ. of Toledo*,
822 F.2d 26 (6th Cir. 1987) ................................................................................................7

*Alexander v. Yale Univ.*,
631 F.2d 178 (2d Cir. 1980).................................................................................................7

*Anthony v. O'Fallon Township High Sch. Dist. 203 Bd. of Educ.*,
No. 23-cv-00967, 2026 WL 878661 (S.D. Ill. Mar. 31, 2026).........................................13

*Bailey v. Worthington Cylinder Corp. & Worthington Indus., Inc.*,
90 F.4th 1193 (7th Cir. 2024) .............................................................................................6

*Barnes v. Gorman*,
536 U.S. 181 (2002).........................................................................................................25

*Bilut v. Northwestern Univ.*,
269 Ill. App. 3d 125 (1st Dist. 1994) ...............................................................................24

*Bimler v. Loyola Univ. of Chi.*,
No. 84-cv-5623, 1985 WL 609 (N.D. Ill. Apr. 12, 1985)................................................24

*Bloch v. Hillel Torah N. Suburban Day Sch.*,
100 Ill. App. 3d 204 (1st Dist. 1981) ...............................................................................24

*Brown v. Rector & Visitors of the Univ. of Va.*,
No. 07-cv-00030, 2008 WL 1943956 (W.D. Va. May 2, 2008)......................................22

*Buschauer v. Columbia Coll. Chi.*,
No. 20-cv-3394, 2021 WL 1293829 (N.D. Ill. Apr. 6, 2021)..........................................21

*C.S. v. Madison Metro Sch. Dist.*,
34 F.4th 536 (7th Cir. 2022) ............................................................................................18

*Canaan v. Carnegie Mellon Univ.*,
760 F. Supp. 3d 306 (W.D. Pa. 2024)...............................................................................15

*Canel v. Art Inst. of Chi.*,
No. 23 C 17064, 2026 WL 776580 (N.D. Ill. Mar. 19, 2026) ....................................... passim

*Carr v. Bd. of Regents of Univ. Sys. of Ga.*,
249 Fed. App'x 146 (11th Cir. 2007) ...............................................................................21

*Cerros v. Steel Tech., Inc.*,
288 F.3d 1040 (7th Cir. 2002) ............................................................................................8

*City of Livonia Empl. Retirement Sys. v. Boeing Co.*,
    306 F.R.D. 175 (N.D. Ill. 2014)..................................................................................12

*Doe v. Galster*,
    768 F.3d 611 (7th Cir. 2014) ......................................................................8, 16, 18, 19

*Doe v. McHenry Cnty. Coll.*,
    No. 17-cv-4247, 2020 WL 5209834 (N.D. Ill. Sept. 1, 2020)......................................24

*Doe v. Northwestern Univ.*,
    Nos. 24-cv-4125 & 4831, 2026 WL 607423 (N.D. Ill. Mar. 3, 2026)............................ passim

*Doe v. Syracuse Univ.*,
    No. 18-cv-1100, 2024 WL 3519769 (N.D.N.Y. July 24, 2024) ....................................16

*Elagha v. Northwestern Univ.*,
    No. 24 C 12066, 2025 WL 1384291 (N.D. Ill. May 13, 2025) ................................15, 21

*Feibleman v. Trs. of Columbia Univ. in the City of New York*,
    No. 19-cv-4327, 2020 WL 3871075 (S.D.N.Y. July 9, 2020)......................................13

*Felber v. Yudof*,
    851 F. Supp. 2d 1182 (N.D. Cal. 2011) ....................................................................13

*Financial Fiduciaries, LLC v. Gannett Co.*,
    46 F.4th 654 (7th Cir. 2022) ....................................................................................22

*Fox v. Bd. of Trs. of State Univ. of N.Y.*,
    42 F.3d 135 (2d Cir. 1994)........................................................................................7

*Frankel v. Regents of Univ. of Cal.*,
    744 F. Supp. 3d 1015 (C.D. Cal. 2024) ....................................................................15

*Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*,
    315 F.3d 817 (7th Cir. 2003) ...............................................................................8, 16

*Galligan v. Adtalem Glob. Educ. Inc.*,
    No. 17-cv-6310, 2019 WL 423356 (N.D. Ill. Feb. 4, 2019).......................................22

*Garrett v. City Univ. of New York*,
    No. 24-cv-9710, 2025 WL 3096550 (S.D.N.Y. Oct. 10, 2025).....................................10

*Gartenberg v. Cooper Union for the Advancement of Sci. & Art*,
    765 F. Supp. 3d 245 (S.D.N.Y. 2025)....................................................................10, 15

*Gatlin on behalf of MGJ v. Ridgeland Sch. Dist. 122*,
    No. 23-cv-7661, 2025 WL 2764508 (N.D. Ill. Sept. 28, 2025)..............................11, 13

iii

*Gerwaski v. State ex rel. Bd. of Regents of the Nevada Sys. of Higher Educ.*,
No. 24-cv-00985, 2025 WL 1294107 (D. Nev. May 5, 2025) ................................10

*Gibson v. Walden Univ., LLC*,
66 F. Supp. 3d 1322 (D. Or. 2014) .......................................................................22

*Gociman v. Loyola Univ. of Chi.*,
41 F.4th 873 (7th Cir. 2022) ...............................................................................22

*Harris v. Adler Sch. of Pro. Psych.*,
309 Ill. App. 3d 856 (1st Dist. 1999) ...................................................................24

*Haywood v. Fitchburg Public Schs.*,
801 F. Supp. 3d 5 (D. Mass. 2025) ......................................................................18

*Help At Home Inc. v. Med. Capital, LLC*,
260 F.3d 748 (7th Cir. 2001) ...............................................................................16

*Hendrichsen v. Ball State Univ.*,
107 Fed. App'x 680 (7th Cir. 2004) ......................................................................15

*In re Beyond Meat, Inc. Protein Content Mktg. & Sales Practices Litig.*,
718 F. Supp. 3d 800 (N.D. Ill. 2024) .................................................................5, 6

*Khan v. Midwestern Univ.*,
147 F. Supp. 3d 718 (N.D. Ill. 2015) ...................................................................20

*Landau v. Corp. of Haverford Coll.*,
789 F. Supp. 3d 401 (E.D. Pa. 2025) ...............................................9, 10, 11, 13

*Loertscher v. Anderson*,
893 F.3d 386 (7th Cir. 2018) .................................................................................7

*Mandel v. Bd. of Trs. of Cal. State Univ.*,
No. 17-cv-03511, 2018 WL 1242067 (N.D. Cal. Mar. 9, 2018) ...........................13

*Mathews v. Clark Atlanta Univ., Inc.*,
No. 17-cv-2963, 2023 WL 2229670 (N.D. Ga. Jan. 13, 2023).............................22

*Morrow v. L.A. Goldschmidt Assocs., Inc.*,
112 Ill.2d 87 (1986) ............................................................................................25

*North Texas Equal Access Fund v. Thomas More Soc'y*,
728 F. Supp. 3d 887 (N.D. Ill. 2024) ....................................................................6

*Nungesser v. Columbia Univ.*,
244 F. Supp. 3d 345 (S.D.N.Y. 2017)...................................................................15

iv

*Omokwale v. Baylor Univ. – Louise Herrington Sch. of Nursing*,
  No. 23-cv-0354, 2024 WL 116428 (N.D. Tex. Jan. 10, 2024) ...............................................21

*Oyoque v. DePaul Univ.*,
  520 F. Supp. 3d 1058 (N.D. Ill. 2021) ................................................................................22

*Payton v. County of Kane*,
  308 F.3d 673 (7th Cir. 2002) .................................................................................................5

*Pederson v. Louisiana State Univ.*,
  213 F.3d 858 (5th Cir. 2000) .................................................................................................7

*Qualls v. Cunningham*,
  183 Fed. App'x 564 (7th Cir. 2006) ...................................................................................8, 14

*Raines v. Byrd*,
  521 U.S. 811 (1997)................................................................................................................6

*Reed v. S. Ill. Univ.*,
  No. 18-cv-1968, 2020 WL 3077186 (S.D. Ill. June 10, 2020) ..............................................13

*Resendez v. Prance*,
  No. 16-cv-862, 2018 WL 3275615 (N.D. Ind. Jan. 26, 2018)...............................................21

*Roe v. Penn. State Univ.*,
  No. 18-2142, 2019 WL 652527 (E.D. Pa. Feb. 15, 2019) ......................................................15

*Roskin-Frazee v. Columbia Univ.*,
  No. 17 Civ. 2032, 2018 WL 6523721 (S.D.N.Y. Nov. 26, 2018) ..........................................16

*Simic v. City of Chi.*,
  851 F.3d 734 (7th Cir. 2017) .................................................................................................6

*Stand With Us Ctr. For Legal Justice v. Mass. Inst. of Tech.*,
  158 F.4th 1 (1st Cir. 2025)...........................................................................................9, 10, 18

*Student A v. Liberty Univ., Inc.*,
  697 F. Supp. 3d 496 (W.D. Va. 2023) ....................................................................................5

*Tobin for Governor v. Ill. State Bd. of Elections*,
  268 F.3d 517 (7th Cir. 2001) .................................................................................................6

*Totten v. Benedictine Univ.*,
  No. 20-cv-6107, 2021 WL 3290926 (N.D. Ill. Aug. 2, 2021) ...............................................20

*Trentadue v. Redmon*,
  619 F.3d 648 (7th Cir. 2010) ...............................................................................................15

v

*Truell v. Regent Univ. Sch. of L.*,
No. 04-cv-716, 2006 WL 2076769 (E.D. Va. July 21, 2006) ................................................22

*UWM Student Ass'n v. Lovell*,
888 F.3d 854 (7th Cir. 2018) ...................................................................................................7

*Williams v. Wendler*,
530 F.3d 584 (7th Cir. 2008) .................................................................................................20

*Yakoby v. Trs. of the Univ. of Pennsylvania*,
No. 23-4789, 2025 WL 1558522 (E.D. Pa. June 2, 2025)................................................11, 23

**STATUTES**

42 U.S.C. § 2000d.....................................................................................................................7

**OTHER AUTHORITIES**

https://www.northwestern.edu/communitystandards/student-handbook/student-handbook-
documents/24-25-student-handbook.pdf (last accessed May 20, 2026)..................................22

**INTRODUCTION**

Plaintiffs' addition of allegations regarding undated and unspecified reports of antisemitic conduct and references to social media postings by Qatari faculty falls far short of addressing the deficiencies that led this Court to dismiss their original complaint. The new section of Plaintiffs' First Amended Consolidated Class Action Complaint ("FAC") purporting to establish Northwestern University's ("Northwestern") actual knowledge of the alleged hostile environment fares no better. Those allegations relate exclusively to events that postdate the injuries allegedly suffered by the four named Plaintiffs. Plaintiffs cannot establish actual knowledge retroactively.

The FAC's deficiencies do not end there. Many of Plaintiffs' new allegations have nothing to do with the four named Plaintiffs. Those allegations are instead rooted in the experiences of other unidentified individuals. Plaintiffs do not have Article III standing to bring a complaint for injuries suffered by others, even if that complaint is brought as a putative class action. The attempt to aggregate the experiences of multiple Jewish students to manufacture a hostile environment has been rejected by numerous courts considering nearly identical claims. In updating their complaint, Plaintiffs also disclose that three of the four of them are no longer students at Northwestern. Absent student status, these Plaintiffs cannot seek injunctive or declaratory relief because their departure from Northwestern makes any injury retrospective and irredressable through equitable relief.

The Court should therefore dismiss Plaintiffs' FAC for several reasons. *First*, Plaintiffs do not have Article III standing to assert claims for injuries suffered by other, unidentified individuals. *Second*, Plaintiffs do not have Article III standing to seek injunctive relief where there is no imminent risk of future harm, and Plaintiffs' claims are moot for the same reason. *Third*, Plaintiffs' FAC does not state a plausible claim for violation of Title VI. There was no severe and pervasive harassment that deprived Plaintiffs of an educational opportunity because: (i) the conduct of which they complain is protected by the First Amendment; (ii) Plaintiffs had little involvement in the

1

facts alleged; and (iii) Plaintiffs were not deprived of any educational benefit. And, while Plaintiffs attempt to address this Court's finding that Northwestern did not have actual notice of many of the allegations in their original complaint by repeatedly citing "121 reports," Plaintiffs provide no details regarding these reports or how they put Northwestern on notice of the specific injuries claimed by Plaintiffs, especially since the reports postdated those injuries. Likewise, Plaintiffs' new allegations do not establish deliberate indifference. As conceded by Plaintiffs in their original complaint, Northwestern swiftly responded to the antisemitic conduct on campus, and Title VI is not a mechanism by which Plaintiffs can obtain their preferred disciplinary response to student-on-student harassment. ***Finally***, the Court should dismiss Plaintiffs' breach of contract claims as Northwestern disclaimed any contractual relationship in its handbook and Plaintiffs do not identify a specific contractual promise that Northwestern breached.

For all of these reasons and those discussed below, Plaintiffs' FAC should be dismissed with prejudice, as no amendment can cure the defects that remain therein.

## BACKGROUND

Plaintiffs are four Jewish students who either attended or are attending Northwestern. (FAC ¶¶ 19-22.) On April 25, 2024, an encampment was erected on Deering Meadow, the central lawn on Northwestern's Evanston campus. (*Id.* ¶ 110.) The perimeter of the encampment displayed signs, such as a "Star of David with a red slash through it" and a "cartoon of former-President Schill… with horns and blood dripping from his mouth." (*Id.* ¶ 113.) Protestors also shouted at Jewish students things such as "burn in hell" and "Zionist pigs are not welcomed in this space." (*Id.* ¶ 117.) On the same day the encampment went up, Northwestern's Chief of Police notified students they were in violation of Northwestern's policy requiring reservations for events on Deering Meadow and demanded that all tents come down. (*Id.* ¶ 128.)

2

Similarly, Northwestern issued a statement that the encampment included "chalkings, flyers, banners and chants that many have found hateful, intimidating, offensive and difficult to avoid" and was prohibited by Northwestern's policies. (*Id.* ¶ 133 (emphasis removed)). Accordingly, Northwestern told protestors that students who failed to remove their tents would be subject to arrest. (*Id.*) When protestors refused to cooperate, Northwestern promised to "move forward with other options to protect the safety of the community and the continued operations of the Evanston campus." (*Id.* ¶ 134.) Four days after the encampment began, Northwestern entered into an agreement with the protestors to peacefully remove their tents. (*Id.* ¶¶ 140-41.)

Plaintiffs, on behalf of a putative class of Jewish Northwestern students, brought Title VI and breach of contract claims against Northwestern seeking relief based on this alleged conduct. On March 3, 2026, this Court dismissed Plaintiffs' Title VI claim after concluding that they failed to plausibly allege either a hostile educational environment or intentional discrimination. *Doe v. Northwestern Univ.*, Nos. 24-cv-4125 & 4831, 2026 WL 607423 (N.D. Ill. Mar. 3, 2026). With respect to Plaintiffs' hostile environment claim, the Court held that Plaintiffs failed to sufficiently plead that Northwestern had actual knowledge as to many of the alleged antisemitic incidents purportedly occurring in the wake of the October 7, 2023 Hamas attack. *Id.* at *4. The Court specifically found that Plaintiffs repeatedly referenced "other incidents," online harassment, antisemitic rhetoric, and false accusations without alleging sufficient factual detail regarding the underlying conduct, whether those incidents were reported to Northwestern, or whether Northwestern officials otherwise had actual knowledge of them. *Id.*

The Court further held that, although Plaintiffs adequately alleged Northwestern had actual knowledge of the Deering Meadow encampment, they failed to plausibly allege deliberate indifference. *Id.* at *5-6. The Court concluded that Plaintiffs' own allegations demonstrated

3

Northwestern acted promptly and reasonably by declaring the encampment prohibited, warning demonstrators they could face discipline or arrest, issuing police citations, publicly condemning antisemitic conduct associated with the encampment, and negotiating an end to the encampment within four days. *Id.* The Court likewise rejected Plaintiffs' intentional discrimination claim under both direct and indirect methods of proof. The Court declined to decide whether to exercise supplemental jurisdiction over Plaintiffs' breach of contract claim and allowed Plaintiffs forty-five days to amend, if Plaintiffs could "cure the deficiencies" identified by the Court. *Id.* at *8.

Plaintiffs sought additional time to file their amended complaint. On April 21, 2026, this Court granted Plaintiffs' request, ordering "if Plaintiffs can, consistent with their obligations under Rule 11, amend their complaint to cure the deficiencies detailed in the Court's 3/3/26 opinion, they may file an amended complaint by 5/4/26." (ECF No. 56.) Plaintiffs filed their FAC on May 4, 2026. (ECF No. 57.) At the time of the filing of their FAC, three of the four Plaintiffs are no longer students at Northwestern. (FAC ¶¶ 19-22.)

Notwithstanding this Court's admonition and their lack of student status, Plaintiffs attempt to revive their dismissed Title VI claims through three categories of new allegations. First, even though they were not present on the Qatari campus, Plaintiffs add further allegations concerning Northwestern's alleged ties to Qatar, including allegations regarding Northwestern Qatari faculty, purported institutional relationships between Qatar and Al Jazeera, and alleged political viewpoints expressed by affiliated faculty and students. Second, Plaintiffs add new allegations concerning the Northwestern Women's Center, including allegations relating to social media activity and statements purportedly reflecting institutional support for antisemitic viewpoints. Third, Plaintiffs add allegations concerning purported post-encampment incidents, including

4

additional allegations of harassment, antisemitic rhetoric, online activity, protests, and Northwestern's alleged failure to discipline students following the Deering Meadow encampment.

## ARGUMENT

**I.**   **The FAC Should Be Dismissed Pursuant To Rule 12(b)(1) Because Plaintiffs do not have Article III Standing and Their Claims Are Moot.**

### A.   Plaintiffs Do Not Have Article III Standing to Bring Claims for Others' Injuries.

Article III requires that a plaintiff have suffered an injury in fact which is fairly traceable to the defendant's conduct and is likely to be redressed by a favorable decision. *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002). In the context of a class action, "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs;… [s]tanding cannot be acquired through the back door of a class action." *Id.* at 682. "Not only must each plaintiff have a personal stake in the case, but each plaintiff must also demonstrate standing with respect to each requested form of relief." *In re Beyond Meat, Inc. Protein Content Mktg. & Sales Practices Litig.*, 718 F. Supp. 3d 800, 809-10 (N.D. Ill. 2024); *see also Student A v. Liberty Univ., Inc.*, 697 F. Supp. 3d 496, 516 (W.D. Va. 2023) ("But the court must 'analyze standing based on the allegations of personal injury made by the named plaintiffs,' and not other members of the prospective class.").

Nearly all of Plaintiffs' FAC alleges conduct entirely unrelated to Plaintiffs. For example, Plaintiffs do not allege to have witnessed any of the conduct occurring in Qatar or seen any of the social media postings by Qatari faculty. (FAC ¶¶ 42-74.) In fact, Plaintiffs do not even allege to have witnessed conduct or social media postings by Evanston students and faculty. (*Id.* ¶¶ 75-82.) Plaintiffs allege "[a]mong the littering of tents, individuals dressed up as members of Hamas and stalked passersby, demanding they state whether they spoke Hebrew." (*Id.* ¶ 111.) Similarly, "at least one Jewish student wearing a kippah was spat on." (*Id.* ¶ 116.) Notably, Plaintiffs do not

5

allege to have been present during these altercations. Plaintiffs' new allegations about "121 reports" of alleged antisemitic conduct fare no better, as there is no allegation Plaintiffs made such reports. Plaintiffs do not have Article III standing to bring claims for injuries they did not suffer. *See Raines v. Byrd*, 521 U.S. 811, 819 (1997); *Bailey v. Worthington Cylinder Corp. & Worthington Indus., Inc.*, 90 F.4th 1193, 1197 (7th Cir. 2024).

Plaintiffs also do not have standing to assert claims for injunctive relief as they have not identified a real and immediate threat of future injury. *Simic v. City of Chi.*, 851 F.3d 734, 738 (7th Cir. 2017). "[S]peculation that [plaintiff] may suffer the same injury at some time in the future" is insufficient to confer standing for prospective injunctive relief. *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief,… if unaccompanied by any continuing, present adverse effects." *In re Beyond Meat*, 718 F. Supp. 3d at 810. Moreover, Plaintiffs must show that their injury is redressable by the relief they requested. *North Texas Equal Access Fund v. Thomas More Soc'y*, 728 F. Supp. 3d 887, 896 (N.D. Ill. 2024).

Plaintiffs cannot meet this threshold. Plaintiffs Jane Doe, John Doe 1, and John Doe 2 are no longer students at Northwestern. (FAC ¶¶ 19-21.) Accordingly, there is no risk that they will suffer an injury under Title VI or from a breach of contract. And while Plaintiff John Doe 3 remains a student at Northwestern (*id.* ¶ 22), he has not established a real and immediate threat of future injury considering that the encampment ended over two years ago and there are no allegations that he suffered any further harm after May 2024. Likewise, none of the Plaintiffs' injuries will be redressed by the injunctive and declaratory relief sought. For example, Plaintiffs seek an injunction requiring Northwestern to investigate all instances of antisemitism during the 2023-2024 academic year. But for Plaintiffs who are no longer students, such injunctive relief would have no effect.

6

**B.      Plaintiffs Jane Doe, John Doe 1, and John Doe 2's Claims for Injunctive and Declaratory Relief are Moot Because They are No Longer Students.**

Article III grants jurisdiction to the federal courts to adjudicate only "actual, ongoing controversies." *Loertscher v. Anderson*, 893 F.3d 386, 392 (7th Cir. 2018). "There is thus no case or controversy, and a suit becomes moot, 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Id.* If at any time during the pendency of the proceedings, a plaintiff no longer has standing, the case has become moot. *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 860 (7th Cir. 2018).

In the context of claims brought by students against their university for injunctive or declaratory relief, when those students graduate or otherwise leave the university, such claims become moot. *Id.* at 862 ("The claims brought by plaintiffs who have graduated are doubly moot."); *see also Pederson v. Louisiana State Univ.*, 213 F.3d 858, 874 (5th Cir. 2000); *Ahmed v. Univ. of Toledo*, 822 F.2d 26, 28 (6th Cir. 1987) (dismissing students' appeal where they were no longer students); *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (same); *Alexander v. Yale Univ.*, 631 F.2d 178, 183-84 (2d Cir. 1980) (same). Because Plaintiffs Jane Doe, John Doe 1, and John Doe 2 are no longer students at Northwestern University, their claims for declaratory and injunctive relief are moot and should be dismissed.

**II.      The FAC Does Not Adequately Allege A Claim For Violation Of Title VI.**

Title VI of the Civil Rights Act mandates that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. As this Court recognized, there are two ways to plead a Title VI claim, through intentional discrimination or by demonstrating a hostile educational

7

environment. *Doe*, 2026 WL 607423, at \*3-7. Although provided another opportunity to do so, Plaintiffs have not plausibly alleged either.

### A. Plaintiffs Fail to Allege a Hostile Environment Claim Under Title VI.

"To plead a Title VI hostile educational environment claim, a plaintiff must allege that: (1) he[] or she participated in a federally funded program; (2) the alleged hostile environment was so severe, pervasive, and objectively offensive that it deprived them of access to educational benefits; (3) the school had actual knowledge of the conduct; and (4) the school was deliberately indifferent to the conduct." *Doe*, 2026 WL 607423, at \*3 (citing *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014)); *see also Qualls v. Cunningham*, 183 Fed. App'x 564, 567 (7th Cir. 2006). Plaintiffs have adequately pled Northwestern received federal funding, but the FAC remains deficient as to all the remaining elements of a Title VI hostile environment claim.

#### 1. Plaintiffs Fail to Allege Severe, Pervasive, and Objectively Offensive Harassment that Denied Them an Educational Benefit.

In order to establish a hostile environment, a plaintiff must plead facts sufficient to show an environment "made hostile by racial and ethnic slurs and harassment" such that it is "subjectively and objectively offensive." *Cerros v. Steel Tech., Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002). The conduct must also be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 821 (7th Cir. 2003). Plaintiffs' new allegations do not remedy their failure to plead a hostile environment that deprived them of an educational opportunity for three reasons. *First*, several courts considering nearly identical alleged conduct have found such conduct protected by the First Amendment and therefore not subject to Title VI liability. *Second*, nearly all of Plaintiffs' FAC details incidents involving third parties – not Plaintiffs – which is insufficient to demonstrate

*Plaintiffs* were subjected to a hostile environment. ***Third***, Plaintiffs cannot allege that they were deprived of any educational opportunity even if their allegations were sufficient to show severe, pervasive, and objectively offensive conduct, which they are not.

### a.  The First Amendment Protects the Speech at Issue.

Plaintiffs cannot recover under Title VI for alleged injuries caused by protected speech. That is because "[h]owever noble the objective of nondiscrimination, institutions cannot be threatened with civil liability for declining to censor First Amendment protected speech." *Landau v. Corp. of Haverford Coll.*, 789 F. Supp. 3d 401, 412 (E.D. Pa. 2025). For that reason, speech on matters of public concern directed to a college community is categorically not unlawful harassment under Title VI. *Id.*; *see also Canel v. Art Inst. of Chi.*, No. 23 C 17064, 2026 WL 776580, at \*6 (N.D. Ill. Mar. 19, 2026). Although Northwestern – as a private institution – can choose to disallow certain speech, the Court cannot use Title VI to compel Northwestern to do so without running afoul of the First Amendment. *Stand With Us Ctr. For Legal Justice v. Mass. Inst. of Tech.*, 158 F.4th 1, 13-14 (1st Cir. 2025).

The First Circuit's decision in *Stand With Us* is directly on point. In that case, university students brought a Title VI claim for failing to discipline or censor political speech related to the Israel/Palestine conflict. *Id.* at 5. In affirming dismissal of the Title VI claim, the First Circuit found that much of the student-protestors' speech was protected by the First Amendment:

> As a private institution, MIT could choose to curtail political speech by its students without First Amendment scrutiny. But MIT's authority to decide for itself whether to prohibit certain political speech is not the issue here. Rather, the question is whether Title VI required MIT to try to put an end to the protestors' speech. And requiring MIT to restrict students' expression merely because those students opposed Israel and favored the Palestinian cause would infringe upon MIT's freedom to encourage, rather than suppress, a vigorous exchange of ideas. Using Title VI to compel adherence to a preferred political viewpoint would also implicate students' First Amendment freedoms.

9

*Id.* at 14 (citations omitted). The court went on to find that speech markedly similar to that at issue here was protected by the First Amendment. *Compare id.* at 7, 15 (holding chants of "Intifada revolution," "resistance is justified," and "from the river to the sea" to be protected by the First Amendment) *with* FAC ¶ 119; *see also Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245, 275 (S.D.N.Y. 2025); *Gerwaski v. State ex rel. Bd. of Regents of the Nevada Sys. of Higher Educ.*, No. 24-cv-00985, 2025 WL 1294107, at *7 (D. Nev. May 5, 2025).

The same result is required here. Plaintiffs plead that the encampment featured antisemitic signs such as a "Star of David with a red slash through it" and "a cartoon of former-President Schill (Northwestern's Jewish president) with horns and blood dripping from his mouth." (FAC ¶ 113.) Similarly, Plaintiffs plead that students characterized the October 7, 2023 Hamas attack on Israel as decolonization, made statements like "Zionist pigs are not welcomed in this space," and chanted "from the river to the sea, Palestine will be free." (*Id.* ¶¶ 117-19.) While Northwestern recognizes that the alleged statements hurt members of its community, the conduct at issue remains inactionable under Title VI. *Stand With Us*, 158 F.4th at 12 ("[S]peech made in public that is related to matters of public concern… cannot be restricted simply because it is upsetting or arouses contempt."); *Garrett v. City Univ. of New York*, No. 24-cv-9710, 2025 WL 3096550, at *11 (S.D.N.Y. Oct. 10, 2025) ("Speech that is discriminatory, offensive, or hateful often falls within the protective ambit of the First Amendment."); *Canel*, 2026 WL 776580, at *12.

Plaintiffs also go to great lengths in describing various statements made by Northwestern faculty and staff, largely in Qatar, related to the Israel/Palestine conflict. (FAC ¶¶ 61, 65-68, 71-80, 86, 100, 103-04, 107, 160.) These, too, are protected by the First Amendment. *See Landau*, 789 F. Supp. 3d at 415 ("And although some of the [faculty social media] posts could easily be conceived as offensive, none of the posts can be construed as anything other than protected

10

political speech."). Because all of the conduct Plaintiffs contend creates a hostile environment is protected political speech, their Title VI claim must be dismissed. Moreover, none of the named Plaintiffs allege that they saw these posts or that the statements created a hostile environment for them specifically.

**b.      Much of the Alleged Conduct Has Nothing to do with Plaintiffs.**

Like their original complaint, the majority of Plaintiffs' allegations in their FAC detail alleged antisemitic conduct, much of which occurred in another country, that they did not witness, or that occurred before or after Plaintiffs were students at Northwestern. These allegations are not actionable because acts occurring on different campuses or to different individuals cannot form the basis to establish severe and pervasive harassment of a *plaintiff. Canel*, 2026 WL 776580, at *10 ("Title VI does not ask whether a plaintiff perceived an environment as hostile from afar. It asks whether plaintiff actively suffered from that environment."); *see also Yakoby v. Trs. of the Univ. of Pennsylvania*, No. 23-4789, 2025 WL 1558522, at *7 (E.D. Pa. June 2, 2025) ("But while Plaintiffs spend an inordinate amount of space expounding on long-past injustices and incidents,… Plaintiffs have failed to plead any *facts* showing either intentional discrimination or deliberate indifference on the part of *Penn*."); *Landau*, 789 F. Supp. 3d at 412 ("Plaintiffs seek to [establish a hostile environment] by citing some 25-plus incidents purportedly impacting the collective conscious of 50-plus mostly unnamed individuals comprising Jews at Haverford. But such *gestalt* pleading cannot be employed as a strategy to avoid scrutiny…."); *Gatlin on behalf of MGJ v. Ridgeland Sch. Dist. 122*, No. 23-cv-7661, 2025 WL 2764508, at *4 (N.D. Ill. Sept. 28, 2025).

The same is true here. Plaintiffs' FAC adds a number of allegations regarding Northwestern's Qatari campus and the failure to investigate "121 reports" of alleged antisemitism. (FAC ¶¶ 10-12, 41-82, 222.) But as in their original complaint, Plaintiffs do not tie the Qatar allegations to Plaintiffs' experiences in Evanston, Illinois. Nor do Plaintiffs allege that they saw

11

or heard the antisemitic social media postings, comments, or statements from the Qatari faculty.

This Court previously stated that

> [t]he alleged connection between Qatari faculty and students and Northwestern's Evanston campus is also conclusory. Plaintiffs repeatedly complain that the relationship between Northwestern-Qatar and Northwestern-Evanston contributes to an unsafe environment for Plaintiffs in Evanston, but they plead no facts as to how…. In short, Plaintiffs' current allegations do not plausibly show how Qatari faculty and students created an unsafe environment for *Plaintiffs* in *Evanston*.

*Doe*, 2026 WL 607423, at *8 (emphasis added).

Plaintiffs attempt to remedy this deficiency by adding allegations about a Joint Advisory Board ("JAB"), shared staff training, and the "impact" of Northwestern-Qatar. For example, Plaintiffs allege that Northwestern's Provost serves as a co-chair of the JAB. During JAB meetings – at which Plaintiffs fail to allege any Northwestern Evanston faculty or staff were present – Qatari employees allegedly attempt to "influence Northwestern's response to antisemitic harassment and discrimination on its Evanston campus." (FAC ¶ 157.) According to Plaintiffs, who also were not present at any JAB meeting,[1] this influence worked, because the Provost suggested that if students really cared about "actual divestment" then they "need the patience to actually do the work to make it happen." (*Id.* ¶ 158.) Plaintiffs conclude that "NU-Q was supporting the unauthorized and harassing event in public and behind closed doors." (*Id.* ¶ 159.)

These allegations are no less conclusory than Plaintiffs' original complaint. This Court found no plausible connection between the actions of Qatari faculty and students and the alleged hostile environment in Evanston. There remain no factual assertions in support of such a connection, nor do Plaintiffs themselves ever allege they witnessed any of the statements made by Qatari faculty or that they attempted to visit Qatar and were denied such an opportunity. *See Canel*,

---

[1] As Plaintiffs were not present at any JAB meetings, it is unclear how they can make these allegations with a good faith basis. *See City of Livonia Empl. Retirement Sys. v. Boeing Co.*, 306 F.R.D. 175, 181-82 (N.D. Ill. 2014).

2026 WL 776580, at *9 ("Canel has not alleged that she was physically present in the museum's garden when the protest took place."); *Felber v. Yudof*, 851 F. Supp. 2d 1182, 1188 (N.D. Cal. 2011) ("[A]cts occurring years before plaintiffs ever enrolled at UC Berkeley, and/or on different campuses entirely, do[] little to demonstrate that plaintiffs suffered severe and pervasive harassment."); *Mandel v. Bd. of Trs. of Cal. State Univ.*, No. 17-cv-03511, 2018 WL 1242067, at *18 (N.D. Cal. Mar. 9, 2018). Additionally, there are no allegations that Plaintiffs ever saw the comment allegedly made by the Provost, which – too – is protected speech.

Nor do Plaintiffs' new allegations about "121 complaints" fare better, both because they lack any factual context and because there is no connection between those complaints and the experiences of Plaintiffs themselves. *Reed v. S. Ill. Univ.*, No. 18-cv-1968, 2020 WL 3077186, at *7 (S.D. Ill. June 10, 2020); *Feibleman v. Trs. of Columbia Univ. in the City of New York*, No. 19-cv-4327, 2020 WL 3871075, at *6 (S.D.N.Y. July 9, 2020). Because the vast majority of the FAC details conduct unrelated to Plaintiffs, Plaintiffs have not alleged severe and pervasive harassment.

### c.      Plaintiffs Were Not Denied an Educational Opportunity.

"For a plaintiff to demonstrate a deprivation of access to educational opportunities, the harassment must have a concrete, negative effect on the victim's education." *Gatlin*, 2025 WL 2764508, at *5; *see also Landau*, 789 F. Supp. 3d at 423. Conduct that does not result in a deprivation of a specific educational opportunity is insufficient. *Anthony v. O'Fallon Township High Sch. Dist. 203 Bd. of Educ.*, No. 23-cv-00967, 2026 WL 878661, at *8 (S.D. Ill. Mar. 31, 2026) ("However, although Plaintiff asserts that Zariah experienced 'deprivation of access to education benefits,' she does not provide any evidence about how Zariah's *education* was negatively impacted specifically by Dollison's alleged *comment*."). "A single instance of peer-on-peer… misconduct, unless extreme, is unlikely to have the requisite impact on the victim's educational opportunities." *Feibleman*, 2020 WL 3871075, at *6.

13

The Court has already held that Plaintiffs did not provide sufficient detail about any deprivation of access to education in their original complaint, finding:

> In the current complaint, the Plaintiffs also lack detail regarding the concrete deprivations of access to Northwestern's educational benefits. To state a valid Title VI claim, Plaintiffs must "plead with specificity that the conduct at issue had some 'concrete, negative effect' on their education."… Here, among other things, Plaintiffs allege that they "heard hateful expressions when walking near the encampment," that they were subjected to verbal or online harassment, that they viewed a friend being struck by a protestor, and that they generally observed unspecified "other incidents" but, again, lack details of the denials of access to Northwestern's resources or opportunities.

*Doe*, 2026 WL 607423, at *3 n.3 (citations omitted); *see also Qualls*, 183 Fed. App'x at 567 (finding plaintiff failed to allege a deprivation of educational benefits even though he alleged that his anxiety due to racial profiling sometimes made him "afraid to leave his apartment.").

Plaintiffs' attempt to remedy their prior failure by adding a handful of conclusory allegations claiming they were deprived of access to educational benefits is insufficient. For example, Jane Doe alleges that she "did not attend a seminar located close to Deering Meadow" and feared "utilizing the services of the Women's Center" because of a social media posting the Women's Center made about a "Palestine Digital Action Toolkit."[2] (FAC ¶¶ 85, 198, 200.) John Doe 2 states that he "missed classes in order to meet with other Jewish students to discuss how they could best maintain their own safety on campus." (*Id.* ¶ 212.) John Doe 3 avers that "his ability to participate in his education at Northwestern has suffered, and he is frequently unable to focus, study, and perform his course work to the best of his ability." (*Id.* ¶ 218.)

These allegations are not sufficient to demonstrate a concrete deprivation of access to educational benefits. For example, missing one class and voluntarily choosing not to access the Women's Center – like Jane Doe alleges – are not deprivations, especially where she also alleges

---

[2] As discussed in Section II(A)(1)(a), this social media post is protected speech.

14

that she has successfully completed her program. (FAC ¶ 19); *Elagha v. Northwestern Univ.*, No. 24 C 12066, 2025 WL 1384291, at *5 (N.D. Ill. May 13, 2025) (finding no deprivation of educational benefits where plaintiff graduated with honors and "is currently a licensed, practicing attorney."); *see also Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010) (no deprivation where plaintiff's "grades did not suffer, she was not extensively absent from school, she graduated with a class rank of 27 out of over 500, and thereafter enrolled in college."); *Hendrichsen v. Ball State Univ.*, 107 Fed. App'x 680, 685 (7th Cir. 2004) (no deprivation where plaintiff's academic performance was unaffected by the conduct at issue). Nor is John Doe 2's unilateral decision to miss classes to hold discussions with other Jewish students sufficient. *See Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 370 (S.D.N.Y. 2017) ("As alleged in the [complaint], Nungesser ultimately chose not to attend these events; he was not precluded from doing so."); *Roe v. Penn. State Univ.*, No. 18-2142, 2019 WL 652527, at *8 (E.D. Pa. Feb. 15, 2019) (finding that missing a week of classes was insufficient and collecting cases).

More is required to adequately allege a deprivation of an educational opportunity, and despite a second chance, Plaintiffs fail to do so. Contrast Plaintiffs' allegations with *Frankel v. Regents of Univ. of Cal.*, 744 F. Supp. 3d 1015 (C.D. Cal. 2024), in which protestors physically blocked access to several campus buildings, disrupted final exams, and caused students to miss exams or evacuate during exams. *Id.* at 1022; *see also Gartenberg*, 765 F. Supp. 3d at 278 (finding deprivation where plaintiffs had engaged therapists, had "intense anxiety and panic attacks," had "missed and/or dropped classes, and failed to complete and perform on assignments," and had delayed obtaining their degrees); *Canaan v. Carnegie Mellon Univ.*, 760 F. Supp. 3d 306, 331 (W.D. Pa. 2024) (finding deprivation where student was required to miss numerous lectures, many hours of class, and one-on-one meetings with a professor). The allegations in Plaintiffs' FAC fall

15

short of those required to establish a deprivation where those allegations demonstrate only voluntary decisions to miss one or two classes or avoid certain areas without any corresponding drop in academic performance. As such, Plaintiffs' Title VI claims fail.

### 2. *Nothing in the FAC Demonstrates that Northwestern Had Actual Knowledge of the Alleged Harms Plaintiffs Suffered.*

In order to state a hostile environment claim, Plaintiffs must plead facts showing that school officials had actual knowledge of the alleged harassment. *Galster*, 768 F.3d at 613-14. To have actual knowledge of an incident, school officials must have witnessed it or received a report of it, *Gabrielle M.*, 315 F.3d at 823-24, and have "authority to address the alleged discrimination and to institute corrective measures." *Doe v. Syracuse Univ.*, No. 18-cv-1100, 2024 WL 3519769, at *11 (N.D.N.Y. July 24, 2024). "Constructive knowledge (*i.e.*, allegations that the school should have known of the harassment) is not enough." *Roskin-Frazee v. Columbia Univ.*, No. 17 Civ. 2032, 2018 WL 6523721, at *4 (S.D.N.Y. Nov. 26, 2018).

This Court previously held that Plaintiffs failed to allege "that Northwestern had actual knowledge of the antisemitic rhetoric, online harassment, or false accusations John Doe 3 faced," or the "derogatory and harassing online post" of which John Doe 2 was the subject. *Doe*, 2026 WL 607423, at *4. And, though this Court found that Northwestern did have actual knowledge of the encampment itself, it found that Northwestern's response to the encampment was not deliberately indifferent.[3] *Id.* at *4-5.

Plaintiffs attempt to cure their failure to allege actual notice by adding a section to their FAC that purports to demonstrate Northwestern had "actual knowledge" of the "antisemitic events on campus that affected Jewish students' ability to enjoy the benefits of the University." FAC ¶¶

---

[3] To the extent that Plaintiffs try to delete allegations about Northwestern's response to the encampment to overcome the Court's finding that the response was not deliberately indifferent, the facts alleged in their original complaint are judicial admissions. *See Help At Home Inc. v. Med. Capital, LLC*, 260 F.3d 748, 754 (7th Cir. 2001).

221-226. But the only facts alleged to support this conclusion are that "Northwestern received at least 121 reports of antisemitic discrimination, intimidation, and harassment between October 7, 2023 and August 5, 2025" and that the then-President made general comments about antisemitism on campus in his congressional testimony. *Id.* Each of these incidents post-dates the alleged harm suffered by the four named Plaintiffs, which is fatal since the Plaintiffs cannot establish actual knowledge retroactively. Plaintiffs also never tie the alleged 121 reports to any of the specific conduct directed towards them, let alone identify any details whatsoever about these "121 reports."

At bottom, Plaintiffs have not alleged facts sufficient to demonstrate Northwestern had actual notice of any complained-of conduct other than the encampment itself. The allegations concerning Plaintiffs are as follows:

| Plaintiff | Allegation | Notice |
| --- | --- | --- |
| Jane Doe | While walking near the encampment, Jane Doe was "accosted by a demonstrator wearing a surgical mask and a keffiyeh. The woman assaulted Jane Doe and her friend, striking Jane Doe's friend with her protest sign and walked away." (FAC ¶ 199.) | No allegation that Jane Doe notified Northwestern of this specific incident, which occurred at/near the encampment. |
| | The next day, while walking near the encampment, protestors told Jane Doe to "burn in hell" and as she walked away, she was followed by protesters. (FAC ¶ 201.) | No allegation that Jane Doe notified Northwestern of this specific incident, which occurred at/near the encampment. |
| John Doe 1 | John Doe 1 heard "hateful expressions" when walking near the encampment with his mother. (FAC ¶ 205.) | No allegation that John Doe 1 notified Northwestern of this specific incident, which occurred at/near the encampment. |
| | John Doe 1 was "previously" told that Jewish students "should go back to Europe, to Poland!" (FAC ¶ 205.) | No allegation that John Doe 1 notified Northwestern of this specific incident. |
| John Doe 2 | While walking near the encampment, a protestor physically harassed one of John Doe 2's friends. (FAC ¶ 209.) | No allegation that John Doe 2 notified Northwestern of this specific incident, which occurred at/near the encampment. |

17

| | A protestor "published a picture of John Doe 2 as he walked near the encampment, in a derogatory and harassing online post." (FAC ¶ 210.) | No allegation that John Doe 2 notified Northwestern of this specific incident, which occurred at/near the encampment. |
|---|---|---|
| John Doe 3 | John Doe 3 has "had violent antisemitic rhetoric shouted at him on multiple occasions." (FAC ¶ 214.) | No allegation that John Doe 3 notified Northwestern of these unspecified incidents. |
| | John Doe 3 had false accusations made against him as a form of retaliation by anti-Jewish students, which resulted in a "fulsome investigation by Northwestern's OCR" which "never led to any discipline." (FAC ¶ 215.) | No allegation that John Doe 3 reported that the complaints were made against him as retaliation, but he does allege that he was not disciplined. |
| | On May 1, 2024, John Doe 3 was walking near an "unauthorized 'Strike for Gaza' demonstration'" that had posters stating "resistance is justified when people are occupied. #AlAqsaFlood." (FAC ¶ 216.) | John Doe 3 reported the post to Mona Dugo, Dean of Students (FAC ¶ 216.) |

As the above chart demonstrates, other than the encampment, the only allegation demonstrating specific knowledge was a report by John Doe 3 to Northwestern's Dean of Students about a single poster. (FAC ¶ 216.) But this single incident – even coupled with the encampment[4] – is protected by the First Amendment and, even if it were not, is insufficient to allege severe and pervasive harassment. *Stand With Us*, 158 F.4th at 21; *Haywood v. Fitchburg Public Schs.*, 801 F. Supp. 3d 5, 16 (D. Mass. 2025).

### 3. *Plaintiffs' Allegations Establish Northwestern was Not Deliberately Indifferent.*

The Supreme Court has set a high bar for a plaintiff seeking to hold its school liable for student-on-student harassment. *Galster*, 768 F.3d at 617. "School officials are given broad latitude to resolve peer harassment and are liable only in 'certain limited circumstances.'" *Id.* Accordingly, courts should avoid second guessing the disciplinary decisions made by school administrators. *C.S. v. Madison Metro Sch. Dist.*, 34 F.4th 536, 543 (7th Cir. 2022). A school's response "will

---

[4] The May 1, 2024 incident – though distinguished as a separate protest – was part of the encampment. (FAC ¶¶ 110, 119, 137, 145, 147.)

18

suffice to avoid institutional liability so long as it is not so unreasonable, under all the circumstances, as to constitute an 'official decision' to permit discrimination." *Id.* As this Court recognized, the school's response need not be "perfect or successful" to "clear this standard." *Doe*, 2026 WL 607423, at *4. A plaintiff also does not have a right to demand specific remedial actions. *Canel*, 2026 WL 776580, at *13. In finding that Northwestern was not deliberately indifferent, this Court held:

> As currently alleged,… the allegations do not explain how Northwestern's conduct was clearly unreasonable or deliberately indifferent. Indeed, in the paragraphs immediately following Plaintiffs' allegations that Northwestern "allowed" the encampment to clamor "uninterrupted," Plaintiffs describe efforts by Northwestern officials to bring the encampment to an end…. Title VI does not mandate a specific set of increasingly punitive measures to remove hostile environments, and courts "must hesitate to second guess" officials' judgments to find the appropriate response.

*Doe,* 2026 WL 607423, at *5-6.

Plaintiffs' FAC does not remedy this failure. The FAC again establishes that Northwestern did not deliberately ignore the issues raised by Plaintiffs. Indeed, Northwestern condemned statements made by its Qatari faculty, providing that such statements attempted to "minimize or misrepresent the horrific killing of Israeli civilians by Hamas." (FAC ¶ 105.) Similarly, Northwestern undertook extensive efforts to end the encampment, denouncing it and ordering students to disperse. (*Id.* ¶¶ 133-34.) When that did not work, Northwestern negotiated with the protestors, reaching a resolution that would end the encampment. (*Id.* ¶ 141.) Plaintiffs now allege that Northwestern "was later forced to terminate this agreement as part of its settlement with the Federal Government" (*id.*), but that does not change the fact that Northwestern took swift action to mitigate the unrest on its campus. Instead, Northwestern's good faith cooperation with the government proves the opposite of deliberate indifference. Because Northwestern was not deliberately indifferent, Plaintiffs' Title VI claims fail.

### B. Plaintiffs Do Not Allege Intentional Discrimination.

To state a claim under Title VI for intentional discrimination, a plaintiff must allege: (1) that she has "been intentionally discriminated against on the grounds of race; and (2) that defendants are recipients of federal financial assistance." *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015). Intentional discrimination can be demonstrated directly or indirectly. *Totten v. Benedictine Univ.*, No. 20-cv-6107, 2021 WL 3290926, at *9 (N.D. Ill. Aug. 2, 2021). Plaintiffs have not alleged intentional discrimination through the direct method, which requires evidence relating to "the motivation of the decisionmaker responsible for the contested decision." *Id.* There are no allegations in the FAC regarding the identity of any particular decisionmaker, much less their intent. Plaintiffs add allegations regarding the Provost's role on the JAB (*see* FAC ¶¶ 157-58) but do not plead facts that show any discriminatory motive. Nor do the alleged statements of the Vice Provost demonstrate discriminatory motive (*id.* ¶¶ 161-63), where those statements are nothing more than communications about the appropriateness of a separate statement condemning a Qatari faculty's social media post. (*Id.* ¶ 160.) Quite simply, there are no plausible allegations to show discriminatory intent.

Instead, as in their original complaint, Plaintiffs attempt to establish intentional discrimination through the indirect method. "To demonstrate discrimination under the indirect method, [a plaintiff] must show that she (1) is a member of a protected class; (2) met the school's legitimate expectations; (3) suffered an adverse action; and (4) was treated less favorably than similarly situated individuals outside of the protected class." *Totten*, 2021 WL 3290926, at *10. Identified comparators must be sufficiently similar. *Williams v. Wendler*, 530 F.3d 584, 587 (7th Cir. 2008). The number of comparators is also critical. "[T]hree cases is an inadequate sample on which to base an inference of discrimination when the cases are dissimilar." *Id.* at 588. Courts have

20

therefore dismissed complaints alleging only a few dissimilar comparators. *Resendez v. Prance*, No. 16-cv-862, 2018 WL 3275615, at *6 (N.D. Ind. Jan. 26, 2018).

Plaintiffs identify only two comparators. (FAC ¶¶ 2-3.) Plaintiffs first describe how Northwestern responded to students seeing "three stickers" and a "handwritten note" stating that "It's okay to be white" in 2019. (*Id.* ¶ 2.) Plaintiffs also discuss Northwestern's opposition to "anti-black racism" and "police brutality" in the wake of George Floyd's death. (*Id.* ¶ 3.) Neither of these incidents is an appropriate comparator. Only the first one involved an on-campus incident. And Plaintiffs identify no actual comparator students from either incident. Moreover, the stickers and handwritten note from 2019 are vastly different from the unprecedented protests at issue here. Even if these incidents were similar, Northwestern responded to all of them the same way: by immediately denouncing discrimination and harassment and taking swift action to ensure the safety of its students. (FAC ¶¶ 2-3, 105, 128, 133-34, 140-41.)

Indeed, this Court previously found Plaintiffs failed to allege intentional discrimination through the same two comparators identified in the original complaint. *Doe*, 2026 WL 607423, at *8 (quoting *Elagha*, 2025 WL 3062790, at *6). Plaintiffs' FAC adds nothing in this regard, warranting the same conclusion that Plaintiffs have failed to allege intentional discrimination.

### III. The FAC Does Not State A Claim For Breach of Contract.

#### A. Northwestern Has Disclaimed Any Contractual Relationship in its Student Handbook.

A student cannot assert a breach of contract claim based on a student policy that expressly disclaims any contractual relationship. *See Buschauer v. Columbia Coll. Chi.*, No. 20-cv-3394, 2021 WL 1293829, at *2, 5 (N.D. Ill. Apr. 6, 2021) (finding no enforceable contract where document included disclaimer of contractual relationship); *see also Carr v. Bd. of Regents of Univ. Sys. of Ga.*, 249 Fed. App'x 146, 150-51 (11th Cir. 2007) (same); *Omokwale v. Baylor Univ. –*

*Louise Herrington Sch. of Nursing*, No. 23-cv-0354, 2024 WL 116428, at \*1-3 (N.D. Tex. Jan. 10, 2024) (same); *Mathews v. Clark Atlanta Univ., Inc.*, No. 17-cv-2963, 2023 WL 2229670, at \*14-15 (N.D. Ga. Jan. 13, 2023) (same); *Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1324-25 (D. Or. 2014) (same); *Brown v. Rector & Visitors of the Univ. of Va.*, No. 07-cv-00030, 2008 WL 1943956, at \*6 (W.D. Va. May 2, 2008) (same); *Truell v. Regent Univ. Sch. of L.*, No. 04-cv-716, 2006 WL 2076769, at \*6-7 (E.D. Va. July 21, 2006) (same).

As in the foregoing cases, Northwestern disclaimed any contractual relationship in its Student Handbook. The beginning of the Student Handbook states in bolded italics that "[t]he provisions of this Student Handbook do not constitute a contract, express or implied, between any students, prospective and/or matriculated, and Northwestern University."[5] The Court should therefore dismiss any claim for breach of contract that is based on the Student Handbook.

**B.      Plaintiffs Have Not Identified a Specific and Enforceable Promise.**

To plausibly state a breach of contract claim under an express or implicit contract theory, a student must point to an identifiable contractual promise. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883-84 (7th Cir. 2022). For an implied contract, the "student's complaint must be specific about the source of the implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id.* at 883 (quoting *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013)). Statements of intention, hope, and desire, however, are not enforceable. *Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1064 (N.D. Ill. 2021); *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17-cv-6310, 2019 WL 423356, at \*7 (N.D.

---

[5]https://www.northwestern.edu/communitystandards/student-handbook/student-handbook-documents/24-25-student-handbook.pdf (last accessed May 20, 2026). The Court can review the entirety of the Student Handbook because it is referenced in Plaintiffs' FAC and is central to Plaintiffs' breach of contract claim. *Financial Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022).

Ill. Feb. 4, 2019). Furthermore, a generalized failure to meet a student's expectations is not sufficient to allege a specific contractual promise. *Yakoby*, 2025 WL 1558522, at *9.

*Yakoby* is persuasive. There, plaintiffs brought a complaint against the University of Pennsylvania alleging breach of contract based on the university's tolerance of antisemitic conduct on its campus since the October 7, 2023 attack on Israel. *Id.* at *1. Plaintiffs alleged that the university's student conduct code, non-discrimination statements, faculty handbook, and charter of the student disciplinary system, among others, gave rise to a contractual obligation on the part of the university to ensure a campus environment free from antisemitism. *Id.* at *9. The court disagreed, dismissing the claim, holding:

> [T]here is no foundation upon which a finding could be made that the foregoing policies constituted a promise or guarantee by Penn that everyone within its ambit and its community would adhere to those stated policies or that its mission would be achieved. Instead, Plaintiffs allege only that "[t]hrough the documents and materials it publishes and provides to students, Penn makes contractual commitments to its students concerning bias-related abuse, harassment, intimidation, and discrimination." In the absence of an alleged failure by Penn to perform a specific contractual *promise*, I cannot find that the alleged agreements' terms are sufficiently definite or enforceable, or that there was a manifestation by the parties that they intended to be bound by the agreement.

*Id.*

Like the policies in *Yakoby*, all of the provisions quoted in the FAC are aspirational statements of "intention, hope or desire." *Oyoque*, 520 F. Supp. 3d at 1064. Besides being aspirational in nature, the provisions of Northwestern's policies do not create enforceable contractual obligations on the part of Northwestern. For example, the policies obligating students to conduct themselves consistent with Northwestern's Code of Conduct run from the student to Northwestern, not vice versa. If students engage in conduct that violates the code, Northwestern has the right to discipline those students. Plaintiffs improperly seek to convert that right into a contractual obligation. Likewise, the faculty handbook establishes obligations of the faculty to

Northwestern. At bottom, Plaintiffs have not identified a specific and enforceable contractual obligation running from Northwestern to Plaintiffs that Northwestern breached.

> **C. Plaintiffs Cannot Assert A Breach of Contract Claim Relating to Northwestern's Title IX Policy.**

Students cannot base a breach of contract claim on an obligation that a school is already legally obligated to perform. That is because "[t]he promise to do something one is already legally obligated to do is not consideration, and no new obligation is thereby created." *Harris v. Adler Sch. of Pro. Psych.*, 309 Ill. App. 3d 856, 862 (1st Dist. 1999); *see also Doe v. McHenry Cnty. Coll.*, No. 17-cv-4247, 2020 WL 5209834, at *5 (N.D. Ill. Sept. 1, 2020). Since Northwestern is already obligated to comply with Title IX, Plaintiffs cannot assert a breach of contract claim against Northwestern for alleged violations of its Title IX policy.

**IV.     <u>Any Requests For Mandatory Injunctive Relief Should Be Stricken.</u>**

Illinois courts generally refuse to award a mandatory injunction where the contract at issue is for personal services and the plaintiff has an adequate remedy at law. *Bloch v. Hillel Torah N. Suburban Day Sch.*, 100 Ill. App. 3d 204, 205 (1st Dist. 1981). That is because "compelling the continuance of a personal relationship to which one of the parties is resistant is repugnant as a form of involuntary servitude." *Id.* The student-school relationship is one for personal services. *Id.*; *Bilut v. Northwestern Univ.*, 269 Ill. App. 3d 125, 133-34 (1st Dist. 1994); *Bimler v. Loyola Univ. of Chi.*, No. 84-cv-5623, 1985 WL 609, at *1-2 (N.D. Ill. Apr. 12, 1985). Mandatory injunctive relief is especially inappropriate in the context of a private university, as such institutions "must be accorded a generous measure of independence and autonomy with respect to the establishment, maintenance and enforcement of academic standards." *Bilut*, 269 Ill. App. 3d at 134.

Plaintiffs here seek far-ranging mandatory injunctive relief compelling Northwestern to take certain actions, such as investigate all instances of antisemitism from 2023-2024, take

disciplinary measures against any students or faculty who "engaged in or permitted" antisemitic behavior, and conduct training. Plaintiffs go so far as requesting that this Court, more than two years after the conduct at issue, appoint a monitor to oversee compliance with any order by the Court and with Northwestern's own policies. This type of relief far exceeds what is appropriate under the law and would require this Court to become embroiled in the day-to-day management of Northwestern. The Court should strike Plaintiffs' requests for mandatory injunctive relief.

V.      **The Court Should Strike Plaintiffs' Request For Punitive Damages.**

Punitive damages are not available under Title VI or for breach of contract. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002); *Morrow v. L.A. Goldschmidt Assocs., Inc.*, 112 Ill.2d 87, 94 (1986). Accordingly, this Court should strike Plaintiffs' claim for punitive damages.

### CONCLUSION

Defendant Northwestern University respectfully requests that this Court enter an order dismissing Plaintiffs' First Amended Consolidated Class Action Complaint with prejudice.

Dated: June 8, 2026                          Respectfully submitted,

                                             NORTHWESTERN UNIVERSITY

                                             By: /s/ Elizabeth A. Thompson
                                             One of its attorneys

James A. Morsch (james.morsch@saul.com)
Casey Grabenstein (casey.grabenstein@saul.com)
Elizabeth A. Thompson (elizabeth.thompson@saul.com)
Megan Warshawsky (megan.warshawsky@saul.com)
Saul Ewing LLP
161 North Clark Street, Suite 4200
Chicago, Illinois 60601
(312) 876-7100

Joshua W.B. Richards (joshua.richards@saul.com) – *pro hac vice*
Saul Ewing LLP
1735 Market Street, Suite 3400
Philadelphia, Pennsylvania 19103
(215) 972-7777

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on June 8, 2026, she caused the foregoing to be filed electronically with the Clerk of the U.S. District Court for the Northern District of Illinois, using the Court's CM/ECF system, which sent electronic notice to all parties who have appeared and are registered as CM/ECF participants in this matter.

/s/ Elizabeth A. Thompson

26